Thomas M. BEDNAR, Plaintiff,

v.

COUNTY OF SCHUYLKILL; David Kurtz, Individually and as Warden of Schuylkill County Prison; and Nicholas A. Martyak, M.D., Defendants.

Thomas M. Bednar, Plaintiff,

v.

Schuylkill County Prison, David Kurtz, Warden, and Nicholas A. Martyak, M.D., Defendants.

Civil Action Nos. 97–1630, 97–6987.

United States District Court, E.D. Pennsylvania.

Nov. 12, 1998.

F. Paul Laubner, Law Office of F. Paul Laubner, Allentown, PA, for plaintiff.

Frank L. Tamulonis, Jr., Zimmerman, Lieberman & Derenzo, Pottsville, PA, John R. Kantner, Post & Schell, P.C., Camp Hill, PA, for defendants Schuylkill.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is Defendant, Dr. Nicolas A. Martyak's ("Dr.Martyak,") [1], Motion for Partial Summary Judgment and the Defendants, County of Schuylkill (the "County") and Warden David J. Kurtz's ("Kurtz"), Motion for Summary Judgment. Plaintiff, Thomas M. Bednar ("Bednar" or "Plaintiff"), initially brought this action both in this Court and in state court alleging three counts: count I asserts a claim against all defendants under 42 U.S.C. § 1983; count II asserts a state law claim against Dr. Martyak for medical negligence; and count III asserts a state law claim against the County for negligence in, *inter alia,* hiring, supervising, and monitoring medical personnel. The state court action was removed to this Court and subsequently consolidated with the existing federal action.[2]

Dr. Martyak seeks summary judgment as to the § 1983 claims in count I and dismissal of the state law claim in count II. The Coun-

---

1. Since institution of this action, Dr. Martyak has passed away. The executrix of his estate has been substituted in his stead. However, we will continue to refer to Dr. Martyak's estate's arguments and positions as Dr. Martyak's in this memorandum.

2. Both the state court action and the federal action named the same defendants and alleged the same causes of action.

ty and Kurtz seek summary judgment as to the § 1983 claims in count I, and the County seeks summary judgment as to the state law claims against it in count III. Plaintiff does not oppose the County's motion for summary judgment as to count III, recognizing the limitations of the Tort Claims Act; therefore, summary judgment is granted as to count III. For the following reasons, Dr. Martyak's motion for summary judgment as to count I is granted; the County's and Kurtz's motion for summary judgment as to count I are granted; and the state law cause of action against Dr. Martyak in count II is dismissed without prejudice.

## BACKGROUND

Plaintiff was incarcerated at the Schuylkill County Prison (the "Prison") on Sunday, May 26, 1996, when he fell to the concrete floor and landed on his side. In this fall, Plaintiff sustained an impacted subcapital fracture of the left hip. On the day of Plaintiff's fall, he was examined by the Prison nurse, Kathleen McCartney ("McCartney"). McCartney examined Plaintiff in his cell. She concluded that Plaintiff had sustained a bruise that was not in need of emergency care requiring that the doctor be called.

Dr. Martyak, who was under written contract to provide services to the Prison, conducted a "sick call" clinic at the Prison on Wednesdays and Fridays for a total of four to five hours per week. On Dr. Martyak's next regularly scheduled clinic day, Wednesday, May 29, 1996, Dr. Martyak examined Plaintiff. Dr. Martyak noted in his records that Plaintiff complained of pain in his left knee and inguinal (groin) areas. Plaintiff alleges that he told Dr. Martyak of his fall and the pain he was having in his hip and that he requested an x-ray be performed. Dr. Martyak found that Plaintiff had some degenerative changes and atrophy of his left lower leg or left lower extremity that was secondary to an old auto accident. Dr. Martyak treated Plaintiff with an ace bandage to be applied to the knee and with Roboxin and Tylenol but did not order an x-ray.

On Friday, May 30, 1996, Dr. Martyak again examined Plaintiff and found that Plaintiff was having muscular pain in the left inguinal area. Dr. Martyak treated Plaintiff for muscular pain and ruled out the need for an x-ray based on his conclusion that the problem was muscular.

On June 12, 1996, Dr. Martyak again saw Plaintiff, who was complaining of pain from his hips to his toes. After an examination, which revealed tenderness in Plaintiff's left foot, lower left leg, and below his left knee, Dr. Martyak determined that Plaintiff was suffering from muscular skeletal pain. As treatment, Dr. Martyak discontinued the Roboxin and ordered that Plaintiff be placed in a medical cell closer to the infirmary and be given Darvocet for the pain. Dr. Martyak also requested that Plaintiff be seen again in two days.

Two days later, on June 14, 1996, Plaintiff saw Dr. Martyak. On this occasion, Plaintiff complained of a lump in the left inguinal area. Dr. Martyak examined Plaintiff and noted that he did not feel a lump or detect a hernia. Dr. Martyak found that there was pain in the left gracilis muscle and diagnosed a muscle spasm. Plaintiff was prescribed Naprosyn for treatment. At no point in the treatment did Dr. Martyak feel that an x-ray was necessary and he did not diagnose the hip fracture.

On June 17, 1996, Plaintiff was still in pain and having trouble walking. In fact, Plaintiff fell again on this date. However, Plaintiff did not seek treatment from the Prison because on that day he was released from the Prison. On the day of Plaintiff's release, he went to see his own doctor, who sent him for an x-ray. The x-ray revealed a fractured hip. Plaintiff received surgery to correct this on June 21, 1996.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Our responsibility is not to resolve disputed issues of fact, but to deter-

mine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505). Rather, we will grant summary judgment unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. 2505. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## II. § 1983 Claims Against Dr. Martyak

In *Estelle v. Gamble,* the Supreme Court determined that "deliberate indifference to the serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). In *Farmer v. Brennan,* the Court clarified the state of mind required to show deliberate indifference by holding that a

> prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference.

511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

■ A prisoner's claims of negligent diagnosis or treatment, do not rise to the level of deliberate indifference. *Estelle,* 429 U.S. at 105–06, 107, 97 S.Ct. 285 (finding that "in the medical context, ... a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"); *Parham v. Johnson,* 126 F.3d 454, 458 n. 7 (3d Cir.1997) (recognizing "well-established law in this and virtually every circuit that actions characterizable as medical malpractice do not rise to the level of 'deliberate indifference'"); *Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d Cir.1993) (same). Further, a doctor's decision not to order specific forms of diagnostic treatment, an x-ray for example, constitute medical judgment, which is not actionable. *Estelle,* 429 U.S. at 107, 97 S.Ct. 285. The Third Circuit has stated that " '[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims which sound in state tort law.' " *United States ex rel. Walker v. Fayette County, Pennsylvania,* 599 F.2d 573, 575 n. 2 (3d Cir.1979) (quoting *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir.1976)). A disagreement between the doctor and the plaintiff as to the medical diagnosis and treatment does not constitute deliberate indifference. *Douglas v. Hill,* No. CIV.A. 95–6497, 1996 WL 716278, *7 (E.D.Pa. Dec.6, 1996) (citing *Boring v. Kozakiewicz,* 833 F.2d 468, 473 (3d Cir.1987)).

In the instant case, Plaintiff claims that Dr. Martyak's failure to diagnose his hip fracture and failure to order an x-ray, which would have diagnosed the fracture and which Plaintiff requested on several occasions, constitute deliberate indifference.

In response, Defendant, Dr. Martyak, does not argue that Plaintiff's medical needs were not "serious." Instead, Dr. Martyak argues that Plaintiff has not presented sufficient evidence to demonstrate that Dr. Martyak acted with deliberate indifference. We agree.

■ Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has failed to demonstrate a genuine issue of material fact on the issue of deliberate indifference. For example, Plaintiff has not

presented any evidence to show that Dr. Martyak recognized Plaintiff's need for an x-ray and then refused to order it. Nor has Plaintiff made any other showing that Dr. Martyak possessed the requisite mental intent to sustain a deliberate indifference claim.[3] *See Durmer,* 991 F.2d at n. 13 (a plaintiff must demonstrate a genuine issue of material fact regarding the requisite mental intent to overcome summary judgment); *see also Williams v. Herbert,* No. CIV.A. 97–6189, 1998 WL 341947, * 3–4 (E.D.Pa. June 25, 1998); *Bonilla v. Malebrance,* No. CIV.A. 96–501, 1997 WL 793583, *3–4 (E.D.Pa. Dec.9, 1997); *Muhammad v. Schwartz,* No. CIV.A. 96–6027, 1997 WL 43015, * 4–5 (E.D.Pa. Jan.27, 1997); *Lewis v. Herbert,* No. CIV.A. 96–2933, 1996 WL 663874, * 4 (E.D.Pa. Nov.14, 1996). At most, Plaintiff may present sufficient evidence to sustain a claim for medical malpractice.[4]

Absent evidence of the requisite intent to establish deliberate indifference, Plaintiff can not sustain a § 1983 action against Dr. Martyak. *See Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979; *Durmer,* 991 F.2d at 69 n. 13. Therefore, summary judgment is granted as to count I against Dr. Martyak.

### III. § 1983 Claims Against the County and Warden Kurtz

#### A. Negligent Hiring Claim Against the County

Plaintiff argues that the County was deliberately indifferent to his medical needs by, in effect, denying him access to competent medical care through the placement of an incompetent physician as the sole prison doctor and not providing the physician with any supervision or written guidance.

As all of the parties recognize, a municipality can not be held liable on the basis of *respondeat superior. See Monell v. Dep't. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978). In order to sustain a claim against a municipality, a plaintiff must demonstrate that the constitutional violation at issue was caused by "a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir.1996).

The crux of Plaintiff's argument is that County negligently hired Dr. Martyak by not adequately screening Dr. Martyak to determine his qualifications.[5] Plaintiff argues that had the County adequately screened Dr. Martyak they would have discovered that Dr. Martyak was primarily a pediatrician who had been sued for medical malpractice on five prior occasions and that his staff privileges had been revoked at one hospital. Plaintiff is not alleging that the County's hiring policies generally are deficient, but rather that this one hiring decision was improper.

"To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *See Bd. of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, ——, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997). In order to successfully argue that the County failed to adequately screen Dr. Martyak, Plaintiff must

demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an

---

3. Plaintiff argues that Dr. Martyak was deliberately indifferent because he testified that in his private practice he would send someone for an x-ray and to an orthopedist if he thought they had a fracture and since he did not do these things for Plaintiff. However, Dr. Martyak testified that he did not think Plaintiff had a fracture.

4. However, we do not reach this issue and thus do not pass judgment on this issue.

5. Plaintiff does not argue that the written policies of the County caused the alleged constitutional violation, but instead argues that since Dr. Martyak was not given a copy of these policies that the County, in effect, allowed Dr. Martyak to establish his own guidelines. Plaintiff further argues that there is a causal connection between this policy of allowing Dr. Martyak to determine the medical care policies at the prison and the injury caused Plaintiff because Dr. Martyak was not qualified to treat Plaintiff.

applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute deliberate indifference. *Id.* at 1392. To find the County culpable, it must be apparent that *"this* [doctor] was highly likely to inflict the *particular* injury suffered by the plaintiff." *Id.* (emphasis in original). We must, therefore, determine whether it was plainly obvious from a review of Dr. Martyak's background that Dr. Martyak would fail to diagnose Plaintiff's hip fracture.

■ Dr. Martyak was a physician duly licensed to practice in the Commonwealth of Pennsylvania.[6] In addition to being a board certified pediatrician, Dr. Martyak also practiced emergency medicine through American Emergency Services as an emergency room physician and was a prison physician for Pennsylvania State Correctional Institutions at Mahanoy and Retreat. The County argues that hiring a physician duly licensed to practice medicine in the Commonwealth of Pennsylvania with experience as an emergency room physician as well as a prison physician in two state correctional institutions is not "tantamount to reckless indifference." *See* (County's Reply Mem. at 2).

Plaintiff presents evidence that on five different occasions Dr. Martyak was sued for medical malpractice. Plaintiff presents to the Court copies of the complaints filed in four of these actions and notices of settlement/discontinuance for all five. Plaintiff argues that a review of Dr. Martyak's background would have revealed these prior suits and that knowledge of these suits would have alerted the County that Dr. Martyak was incompetent. However, we find that there is nothing inherent in the filing of any of these complaints alleging medical malpractice that would lead to the conclusion that a plainly obvious consequence of hiring Dr. Martyak would be deprivation of Plaintiff's rights through Dr. Martyak's failure to diagnose Plaintiff's condition.

There has been no evidence presented that there was a final adjudication on the merits in any of these prior medical malpractice cases nor has any evidence been presented to demonstrate an admission of liability by Dr. Martyak in any of these cases. The County, which had knowledge of Dr. Martyak's background, had or should have had knowledge of these alleged malpractice claims, but that still does not lead to the conclusion that a plainly obvious consequence of the County's decision would be that Plaintiff's hip fracture would not be diagnosed. *See Brown,* 117 S.Ct. at 1392.

There is also nothing inherent in the knowledge that Dr. Martyak's staff privileges had been suspended at Hazleton General Hospital that would lead the County to conclude that there was an obvious risk that Plaintiff would have suffered this particular injury.[7] Dr. Martyak testified that his staff privileges were suspended because of "chart delinquency" and that he never went back to the hospital. *See* (Martyak Dep. at 7). Plaintiff has not presented any other explanation for the suspension of Dr. Martyak's staff privileges at Hazleton General Hospital. Therefore, viewing the facts in the light most favorable to Plaintiff, that the County knew that Dr. Martyak's staff privileges had been suspended due to chart delinquency does not lead to the conclusion that a plainly obvious consequence of hiring Dr. Martyak would be that he would allegedly misdiagnose Plaintiff's hip fracture.[8] *See generally Palo v. John W. Harper, Inc.,* No. CIV.A.96–6442, 1996 WL 41561, *2 (E.D.Pa. Feb.2, 1996) ("negligence in hiring ... does not rise to the level of deliberate indifference in the absence of evidence of intentional harm").

Because Plaintiff has not met his burden, summary judgment is granted for the Coun-

---

6. Dr. Martyak was a graduate of the University of Scranton, *Georgetown Medical School,* and performed his internship and residency at the Medical College of Virginia.

7. Dr. Martyak still maintained staff privileges at Hazleton St. Joseph's Medical Center.

8. Plaintiff does not allege any other instances where Dr. Martyak *misdiagnosed a prisoner's* condition. Thus, there is no evidence of any other form of knowledge that the County may have had of Dr. Martyak's alleged lack of qualifications.

ty as to count I. *See Brown,* 117 S.Ct. at 1392.

### B. Negligent Supervision Claim Against Warden Kurtz

Plaintiff argues that Kurtz had knowledge of and acquiesced in Dr. Martyak's violation of Plaintiff's constitutional right to medical care. Plaintiff argues that Kurtz failed to provide Dr. Martyak with any written guidelines or policies during the doctor's tenure as a prison doctor. Due to this failure, Plaintiff argues Kurtz knew of the possibility that the doctor could deny proper medical attention. Plaintiff further argues that given that Kurtz received copies of four accident/incident reports filed by prison officials regarding Bednar, he knew of "Plaintiff's plight" and knew that Plaintiff had been denied proper medical care. Plaintiff argues that Kurtz was deliberately indifferent because, despite this knowledge, he chose to do nothing.

▮▮ To maintain a failure to supervise claim, a plaintiff must "(1) identify with particularity what the supervisory official failed to do that demonstrates his deliberate indifference, and (2) demonstrate a close causal relationship between the identified deficiency and the ultimate injury." *Kis v. County of Schuylkill,* 866 F.Supp. 1462, 1474 (E.D.Pa. 1994) (citing *Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir.1989)). In order to establish deliberate indifference, plaintiff must demonstrate that the "official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff has not met this burden.

▮▮ Kurtz's failure to provide Dr. Martyak with a copy of the Prison's written policies [9] regarding medical treatment is not evidence of deliberate indifference. Plaintiff has not presented any evidence that would demonstrate that this failure created an ex-

cessive risk to inmate health and safety. Further, given the content of these written guidelines and policies there is certainly no evidence of a causal connection between Kurtz's failure to provide the policies to Dr. Martyak and Plaintiff's injury.

Kurtz's knowledge of the four accident/incident reports filed concerning Bednar also does not establish deliberate indifference. A review of the incident reports would have told Kurtz that: Plaintiff tripped and fell and that he complained of pain in his left side and thigh for which he was seen by the nurse and given an analgesic cream and Tylenol (5/26/96 report); that he refused his medication and stated that he could not get out of bed due to pain in his leg and kidneys but that he was under the doctor's care for these complaints (6/7 and 6/8/96 report); that he was seen limping on his right leg and then switching to his other leg (6/8/96 report); and that he was told by a correctional officer to come up for his food tray (6/8/96 report). *See* (Accident/Incident Reports attached to Martyak Dep. at Ex. 7). Assuming Kurtz received these reports and viewing the evidence in the light most favorable to the Plaintiff, these reports are insufficient to establish that Kurtz knew of and disregarded an excessive risk to Plaintiff's health and safety. *See Durmer,* 991 F.2d at 69 (finding that warden and state commissioner for corrections could not be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor").

As Plaintiff has failed to meet his burden, summary judgment is granted as to count I against Kurtz.

### IV. State Law Negligence Claims Against Dr. Martyak

▮▮ We originally exercised pendent jurisdiction regarding the state law negligence claims asserted against Dr. Martyak in count II. However, as we have granted summary judgment as to all federal claims, we will

---

9. The policies dictate, *inter alia,* what the prison staff should do in the event of a medical emergency, what the procedure for transportation of a prisoner to the hospital is, who should provide the medical treatment in the prison, and who determines what medical treatment, if any, will

be provided. *See* (County's Motion for Summary Judgment at Ex. A and B) and (McCartney Dep. at Ex. 1). Absent an emergency situation, the Prison policies give the prison physician final authority to determine if medical treatment is needed and what treatment is needed.

dismiss the state law claims without prejudice to allow Plaintiff an opportunity to raise these claims in state court. *See Muhammad*, 1997 WL 43015 at *6. We do not express any opinion as to the outcome of the state law malpractice claim.

An appropriate Order follows.

## ORDER

AND NOW, this 12th day of November, 1998, upon consideration of Defendants' Motions for Summary Judgment and Plaintiff's responses thereto, it is hereby ORDERED, in accordance with the foregoing Memorandum, as follows:

1) Dr. Martyak's Motion for Partial Summary Judgment is GRANTED as to Count I;

2) Schuylkill County's Motion for Summary Judgment is GRANTED as to Count I and Count III;

3) Warden David Kurtz's Motion for Summary Judgment is GRANTED as to Count I; and

4) the state law negligence claim asserted against Dr. Martyak in Count II is DISMISSED WITHOUT PREJUDICE.