Vincent L. AMMONS, Plaintiff,

v.

Dr. Debb LEMKE, Dr. Bruce Gerlinger, Renee Anderson, Becky Dressler and Rita Ericson, Defendants.

No. 06 C 20 C.

United States District Court,
W.D. Wisconsin.

March 31, 2006.

Vincent L. Ammons, Stanley, WI, pro se.

Corey F. Finkelmeyer, Assistant Attorney General, Madison, WI, for Defendants.

## ORDER

CRABB, District Judge.

This is a civil action for monetary, injunctive and declaratory relief, filed pursuant to 42 U.S.C. § 1983. Plaintiff Vincent Ammons is currently incarcerated at the Stanley Correctional Institution in Stanley, Wisconsin. Although plaintiff has paid the filing fee in full, because he is a prisoner, his complaint must be screened pursuant to 28 U.S.C. § 1915A. In performing that screening, the court must construe the complaint liberally. *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, it must dismiss the complaint if, even under a liberal construction, it is legally frivolous or malicious, fails to state a claim upon which relief may be granted or seeks money damages from a defendant who is immune from such relief. 42 U.S.C. § 1915(e).

From plaintiff's complaint, I understand him to be alleging the following.

## ALLEGATIONS OF FACT

### A. *Parties*

At all times relevant, plaintiff Vincent Ammons was a prisoner incarcerated at the Stanley Correctional Institution in Stanley, Wisconsin. Defendant Debb Lemke is a physician employed by the Wisconsin Department of Corrections' Bureau of Health Services; at all times relevant, she was working as a visiting primary care physician at the Stanley Correctional Institution. Defendant Bruce Gerlinger is a physician employed by the Bureau of Health Services at the Stanley Correctional Institution. Defendants Renee Anderson and Rita Ericson are nurses employed by the Bureau of Health Services at the Stanley Correctional Institution. Defendant Becky Dressler is employed by the Bureau as a nurse supervisor at the institution.

### B. *Wrist Injury*

On May 28, 2005, plaintiff slipped and fell in his cell, hitting his left hand and wrist on the metal railing of his bed. He experienced pain and swelling in his wrist but decided to let the injury heal by itself. On June 1, 2005, plaintiff went to the health services unit for treatment for his diabetes. He showed defendant Lemke his wrist and told her about his fall and the pain and swelling he was experiencing. Without examining his wrist or taking an x-ray, defendant Lemke told plaintiff that his wrist would heal on its own. Plaintiff stated again that he was in pain and needed treatment but defendant Lemke refused to provide treatment.

On June 29, 2005, plaintiff submitted a health service request to defendant Lemke requesting treatment for his wrist, in which he wrote the following:

> my hand is not just sore! There is a serious problem effecting it, and it won't just go away with time!! It must be treated appropriately.

Defendants Anderson and Dressler intercepted the request and concealed it from defendant Lemke. Plaintiff received a copy of the request along with a written response signed by defendants Anderson and Dressler, stating that plaintiff had an upcoming appointment with a nurse practitioner to discuss his injury and that if he wished to file an inmate complaint, he should use the proper complaint form. Plaintiff never saw a nurse practitioner for treatment of his wrist injury.

On August 12, 2005, defendant Gerlinger examined plaintiff's wrist. Plaintiff told him that (1) he had injured it on May 28, 2005; (2) it was swollen and painful; (3) defendant Lemke did not examine or treat it on June 1, 2005; and (4) the medical request he sent to defendant Lemke on June 29, 2005 had been intercepted and concealed by defendants Anderson and

Dressler. Defendant Gerlinger told plaintiff that his injury was serious and would require an x-ray. However, he refused to provide plaintiff medicine for his pain. On August 22, 2005, defendant Gerlinger reviewed plaintiff's x-ray and learned that plaintiff had a "united fracture of the ulnar styloid process." He refused to provide plaintiff with any treatment. Defendant Gerlinger knew or should have known that the fracture was splitting plaintiff's bone structure and causing severe pain.

On August 24, 2005, plaintiff submitted another health services request in which he requested treatment for his wrist. On August 25, 2005, defendant Gerlinger wrote in his records that plaintiff's injury was the result of an old fracture. Also, defendant Gerlinger drafted a "Test Results Memo." He dated the memo August 22, 2005 and wrote that plaintiff's recent wrist injury was the result of an old fracture and that he could not provide any treatment for the injury even though he knew or should have known that plaintiff's injury required surgery, a cast and pain medication. Plaintiff received the memo on August 29, 2005.

Thereafter, plaintiff wrote a letter to Governor Doyle and high-level officials in the Department of Corrections detailing his injury, defendants' denial of medical treatment and the falsification of his medical records. Also, he instructed Karen Taylor, a resident of Phoenix, Arizona, to call Department of Corrections Secretary Matthew Frank and Administrator Steve Casperson and complain about the denial of medical care and falsification of plaintiff's medical records.

Defendant Gerlinger examined plaintiff again on September 14, 2005. Gerlinger told plaintiff that he was denying him medical care despite knowing that his wrist had been fractured and required treatment and medication. Nevertheless, defendant Gerlinger made an appointment for plaintiff to see an orthopedic specialist and prescribed pain medication for plaintiff. Because defendants Lemke, Gerlinger, Anderson and Dressler failed to provide treatment, plaintiff has experienced permanent injury to his wrist, scarring, bone disfigurement and constant pain.

## C. Bleeding Rectum

On June 18, 2005, plaintiff discovered that he was bleeding from his rectum. At the time, he knew that his colon was swollen and protruding through his anus. After pushing his colon back into his body, he informed the unit correctional officer that he was bleeding and needed to see a doctor. The officer told plaintiff to submit a health services request. Instead, plaintiff showed the officer the towel he had used to clean up the blood and was escorted to the health services unit. When plaintiff arrived, he told defendant Ericson that he was bleeding from his rectum, that his colon was swollen and protruding from his anus and that he was in pain. He gave her the blood-stained towel. Defendant Ericson asked plaintiff to drop his pants and recline on the examining table. She looked at plaintiff's anus from a distance of four to five feet and examined the plastic bag containing the blood-stained towel. She told him that everything was okay and that she would submit her progress notes to the doctor, who would determine whether plaintiff would be scheduled for treatment. She did not provide any treatment for him even though she knew or should have known that failing to adequately examine and diagnose his condition would subject him to needless pain and suffering.

Plaintiff experienced pain in connection with his bleeding rectum and swollen and extended colon from June 18, 2005 until August 12, 2005, when defendant Gerlinger diagnosed and treated his condition. On June 21, 2005, plaintiff submitted a health services request to defendant Lemke re-

questing treatment for his rectal bleeding, protruding colon and pain. Plaintiff received defendant Lemke's written response to his request on June 27, 2005. In the response, defendant Lemke wrote that plaintiff would be seen "during his next follow-up, which should be next week." Plaintiff did not have an appointment scheduled for the next week and was not seen by anyone. Defendant Lemke knew or should have known that plaintiff did not have an appointment for follow-up care when he responded to plaintiff's request.

On June 29, 2005, plaintiff submitted another request for treatment to defendant Lemke in which he wrote that he needed "to see a doctor for a bleeding rectum and extended colon." Defendants Anderson and Dressler intercepted the request and concealed it from defendant Lemke. On June 30, 2005, plaintiff received a copy of the request along with a written response signed by defendants Anderson and Dressler, stating that plaintiff had an upcoming appointment with a nurse practitioner to discuss his injury and that if he wished to file an inmate complaint, he should use the proper complaint form. Plaintiff never saw a nurse practitioner for his injuries.

On August 12, 2005, defendant Gerlinger examined plaintiff and prescribed medication to relieve the pain associated with acute hemorrhoids.

## DISCUSSION

### A. *Eighth Amendment Standard*

I understand plaintiff to allege that defendants' failure to properly treat his wrist injury and his rectal bleeding violated his rights under the Eighth Amendment. The terms of that amendment protect prison inmates from cruel and unusual punishment. The amendment has been interpreted also to require the government to provide for inmates' basic human needs— food, clothing, shelter, medical care, etc.

*Higgason v. Farley,* 83 F.3d 807, 809 (7th Cir.1996). With respect to medical care, the Supreme Court has held that "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" to state an Eighth Amendment claim. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

■ This standard contains objective and subjective components. First, an inmate's medical need must be objectively serious. A condition meets this standard if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir.2005). In addition, the Court of Appeals for the Seventh Circuit has held that the phrase "serious medical needs" encompasses not only conditions that are life-threatening or that carry risks of permanent serious impairment if left untreated, but also those in which the deliberately indifferent withholding of medical care results in needless pain and suffering. *Gutierrez v. Peters,* 111 F.3d 1364, 1371 (7th Cir.1997).

■ The subjective element of a denial of medical care claim requires that the prison official act with a sufficiently culpable state of mind. *Id.* at 1369. This state of mind, known as deliberate indifference, requires at a minimum that a prison official be aware of and disregard a substantial risk to the inmate's health. *Greeno,* 414 F.3d at 653. In other words, the official "must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and 'must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). However, "a prisoner claiming deliberate indifference need not prove that

the prison officials intended, hoped· for, or desired the harm that transpired." *Haley v. Gross,* 86 F.3d 630, 641 (7th Cir.1996). On the other hand, inadvertent error, negligence, gross negligence and ordinary malpractice do not constitute deliberate indifference. *Vance v. Peters,* 97 F.3d 987, 992 (7th Cir.1996); *see also Snipes v. DeTella,* 95 F.3d 586, 590–91 (7th Cir.1996). In the same vein, the Eighth Amendment is not a vehicle for inmates to express disagreement or displeasure over the medical care they are receiving. *Snipes,* 95 F.3d at 591.

### B. *Wrist Injury*

■ The first question is whether plaintiff's injury was a serious medical condition. Plaintiff alleges that the injury to his wrist was diagnosed as a fracture of the ulnar styloid process and that the injury caused his bone structure to· split and caused him severe pain. Moreover, he alleges that his wrist has sustained permanent injury, bone disfigurement and that it continues to cause him pain. At this stage of the proceedings, these allegations are sufficient to suggest that plaintiff's injury constitutes a serious medical condition. *Clemmons v. Bohannon,* 956 F.2d 1523, 1527 (10th Cir.1992) (citing cases holding that broken bones are sufficiently serious for purpose of Eighth Amendment); *Mandel v. Doe,* 888 F.2d 783 (11th Cir.1989).

The next question is whether plaintiff's allegations suggest that defendants acted deliberately indifferent towards his injury. I will evaluate plaintiff's allegations with respect to each defendant separately except for defendants Anderson and Dressler.

### 1. *Defendant Lemke*

Plaintiff alleges that on June 1, 2005, he showed defendant Lemke his injury and described how it occurred and that, without examining it or ordering an x-ray, defendant Lemke told plaintiff that the injury would heal on its own. Plaintiff contends that defendant Lemke should have given him a brace for his wrist because it would have prevented his wrist bone from becoming disfigured and would have prevented the accumulation of scar tissue. He contends further that defendant Lemke should have examined his wrist to determine whether an x-ray was needed.

■ To the extent plaintiff's allegations express mere disagreement with defendant Lemke's decision not to x-ray his wrist, give him a brace or prescribe him pain medication, his allegations are insufficient to state a claim for deliberate indifference. Disagreement with a course of treatment does not give rise to an Eighth Amendment violation unless the treatment provided is "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Thomas v. Pate,* 493 F.2d 151, ·158 (7th Cir.1974). In this case, plaintiff's allegations do not support an inference that defendant Lemke's actions on June 1, 2005 were blatantly inappropriate or that they seriously aggravated plaintiff's injury. Moreover, a physician's decision not to order specific forms of diagnostic treatment, such as an x-ray, is not actionable under the Eighth Amendment. *Estelle,* 429 U.S. at 107, 97 S.Ct. 285 ("the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."); *Snipes,* 95 F.3d at 591; *Bednar v. County of Schuylkill,* 29 F.Supp.2d 250, 253 (E.D.Pa.1998). Finally, I note that although defendant Lemke did not order an x-ray on June 1, plaintiff's allegations suggest that an x-ray of his wrist was taken sometime in August 2005.

■ However, plaintiff's allegation that defendant Lemke refused to examine plaintiff's wrist is troubling, especially in light of the fact that plaintiff told her about the pain and swelling he was experiencing. It is possible that plaintiff might be able to introduce facts showing that defendant Lemke's failure to examine his wrist and begin treatment on June 1, 2005 caused him to endure pain that could have been prevented or caused permanent injury to his wrist. Therefore, I will grant plaintiff's request for leave to proceed against defendant Lemke on this claim.

## 2. *Defendants Anderson and Dressler*

■ Plaintiff alleges that on June 29, 2005, defendants Anderson and Dressler "intercepted and concealed" a health service request he wrote to defendant Lemke. By doing so, he contends, they obstructed his access to "a qualified medical professional who could have examined his wrist injury, ordered the necessary x-ray tests . . ., and provided the treatment and care that would have begun the process of healing his wrist fracture injury." Cpt., dkt. # 2, at ¶ 62. First, there is no indication that defendants Anderson and Dressler were aware of the nature of plaintiff's injury. Plaintiff's medical request mentions only a "serious problem" with his hand. Second, plaintiff's allegations do not indicate that defendants Anderson and Dressler responded to his request with anything approaching deliberate indifference. He alleges that defendants responded to the request by informing him that he would be able to discuss his injury with a nurse practitioner at an upcoming appointment. He has not alleged that defendants threw his request away or disregarded it completely. Moreover, the fact that plaintiff never saw a nurse practitioner is insufficient to suggest that defendants lied in their response. Plaintiff's use of the words "intercepted and concealed" are not enough to breathe life into his allegations.

In all likelihood, defendants Anderson and Dressler (and not defendant Lemke) responded to plaintiff's request because that was one of their duties as nurses. Plaintiff's implication that defendants Anderson and Dressler should have passed his request onto defendant Lemke is insufficient to state a claim. Plaintiff will be denied leave to proceed against defendants Anderson and Dressler.

## 3. *Defendant Gerlinger*

Plaintiff alleges that defendant Gerlinger examined his wrist on August 12, 2005 and reviewed an x-ray of his wrist on August 22, 2005, at which time he learned that plaintiff had a fracture. He alleges further that defendant Gerlinger concluded that plaintiff's injury was the result of an old fracture for which he could not provide any treatment and that he wrote his conclusion in plaintiff's medical records and it a memorandum dated August 22, 2005. Finally, plaintiff alleges that defendant Gerlinger examined him again on September 14, 2005, prescribed pain medication for him and made an appointment for plaintiff to see an orthopedic specialist.

■ These allegations are insufficient to state a claim of deliberate indifference. At most, they indicate that defendant Gerlinger made a mistake in not prescribing plaintiff medication or arranging an appointment with the orthopedic specialist sooner. Medical mistakes, however, do not amount to deliberate indifference. Plaintiff concedes that defendant Gerlinger examined him twice in a month's time, reviewed an x-ray of his wrist, determined initially that no treatment was possible because plaintiff's injury was the result of an old fracture but later prescribed pain medication and arranged for plaintiff to see an orthopedic specialist. Far from ignoring or aggravating plaintiff's injury, defendant Gerlinger

was attentive to it and ultimately provided plaintiff the treatment he wanted. Plaintiff's allegations indicate that defendant Gerlinger's decision to prescribe medication and arrange an appointment with an orthopedic specialist was made after plaintiff wrote letters to officials in the Department of Corrections complaining about his inability to obtain the medical treatment he wanted. Again, this shows at most that plaintiff disagreed with defendant Gerlinger's initial conclusion that he could not treat plaintiff's injury. Plaintiff will be denied leave to proceed on this claim against defendant Gerlinger.

## C. Rectal Bleeding

Plaintiff alleges that defendants Ericson, Lemke, Anderson and Dressler were deliberately indifferent in treating or failing to treat his rectal bleeding and protruding colon. I will assume that these conditions were severe enough to constitute a serious medical need. *Gil v. Reed,* 381 F.3d 649 (7th Cir.2004). As with plaintiff's claim concerning his wrist injury, I will address the question of deliberate indifference individually for each defendant.

### 1. Defendant Ericson

Plaintiff contends that defendant Ericson refused to treat his rectal bleeding and protruding colon when she saw him in the health services unit on June 18, 2005. According to his allegations, after plaintiff had pushed his colon back into his body, he was taken to the health services unit where defendant Ericson told plaintiff to lie on an examining table. He alleges that she looked at his anus from a distance of four or five feet and told him that he would be okay and that she would forward her notes to the doctor, who would decide how to treat plaintiff's condition. Plaintiff alleges that she failed to "provide him with any recognized form of medical treatment

and care," knowing that he would suffer needlessly.

■ The Court of Appeals for the Seventh Circuit has stated that nurses may exhibit deliberate indifference by withholding prescribed medication or by dispensing medication known to aggravate an inmate's condition. *Greeno v. Daley,* 414 F.3d 645, 654 (7th Cir.2005); *Walker v. Benjamin,* 293 F.3d 1030, 1039–40 (7th Cir.2002). However, plaintiff faults defendant Ericson for not treating plaintiff before his condition had been diagnosed. (Plaintiff's allegations suggest that he sought treatment for his condition for the first time on June 18, 2005.) As a nurse, defendant Ericson was not qualified to diagnose plaintiff's condition. Nor was she qualified to prescribe a course of treatment. However, she examined plaintiff, took his condition seriously, determined that his condition was serious enough to warrant a doctor's attention and told plaintiff that she would pass her notes to a doctor. Plaintiff may not state an Eighth Amendment claim by alleging that defendant Ericson failed to do something she was not qualified to do. Therefore, he will be denied leave to proceed against her on this claim.

### 2. Defendant Lemke

Plaintiff alleges that defendant Lemke acted with deliberate indifference by not treating his condition after he submitted a health services request on June 21, 2005 specifying that his colon was protruding and his rectum was bleeding. Plaintiff alleges that defendant Lemke responded to the request by informing plaintiff that he was scheduled for a follow-up appointment the next week. Finally, plaintiff alleges that he was not scheduled for an appointment the next week and that defendant Lemke knew or should have known

this when he responded to plaintiff's request.

■ From plaintiff's allegations, it appears that his request form provided notice to defendant Lemke of the symptoms he was experiencing. The question is whether defendant Lemke's response to plaintiff's request constituted deliberate indifference. Accepting plaintiff's allegations as true, defendant Lemke refused to examine or treat plaintiff and instead lied to him, telling him that he would be seen the following week. It is possible that plaintiff may be able to introduce facts substantiating these allegations. Therefore, I will allow plaintiff to proceed against defendant Lemke. I note, however, that plaintiff faces an uphill battle in proving that failure to respond to one request for treatment constitutes deliberate indifference.

### 3. Defendants Anderson and Dressler

■ Plaintiff alleges that defendants Anderson and Dressler intercepted and concealed from defendant Lemke a second health services request he submitted on June 29, 2005 concerning his bleeding rectum and protruding colon. Plaintiff alleges that instead of passing his request on to defendant Lemke, defendants Anderson and Dressler responded to the request by informing him that he had an appointment to discuss his condition with a nurse practitioner soon. Plaintiff made the same allegation against defendants Anderson and Dressler with respect to a request he submitted in connection with his wrist injury. For the reasons expressed in the discussion of that claim, I will deny plaintiff leave to proceed on this claim against defendants Anderson and Dressler.

### ORDER

IT IS ORDERED that

1. Plaintiff Vincent Ammons' request for leave to proceed is GRANTED with respect to his claims that:

a. Defendant Debb Lemke violated his Eighth Amendment protection against cruel and unusual punishment by failing to examine his wrist on June 1, 2005; and

b. Defendant Lemke violated his Eighth Amendment protection against cruel and unusual punishment by failing to treat or examine plaintiff's protruding colon and rectal bleeding after plaintiff submitted a medical request on June 21, 2005;

2. Plaintiff's request for leave to proceed is DENIED with respect to his claims that

a. Defendants Renee Anderson and Becky Dressler's June 29, 2005 response to plaintiff's medical request concerning his wrist injury violated his Eighth Amendment protection against cruel and unusual punishment;

b. Defendant Bruce Gerlinger's treatment of plaintiff's wrist injury violated his Eighth Amendment protection against cruel and unusual punishment;

c. Defendant Rita Ericson's refusal to diagnose or treat plaintiff's rectal bleeding and protruding colon on June 18, 2005 violated his Eighth Amendment protection against cruel and unusual punishment; and

d. Defendants Anderson and Dressler's response to plaintiff's June 29, 2005 medical request concerning his rectal bleeding and protruding colon violated his Eighth Amendment protection against cruel and unusual punishment.

3. Defendants Gerlinger, Anderson, Dressler and Ericson are DISMISSED from this case; and

4. Plaintiff is responsible for serving his complaint upon defendant Lemke. A

875

memorandum describing the procedure to be followed in serving a complaint on individuals in a federal lawsuit is attached to this order, along with one copy of plaintiff's complaint and necessary forms for obtaining from defendant a waiver of service of summons.

5. For the remainder of this lawsuit, plaintiff must send defendant a copy of every paper or document that he files with the court. Once plaintiff learns the name of the lawyer that will be representing defendant, he should serve the lawyer directly rather than defendant. The court will disregard documents plaintiff submits that do not show on the court's copy that plaintiff has sent a copy to defendant or to defendant's attorney.

6. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.